UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JERRY DON JOHNSON,

        Plaintiff,                    Case No. 2:20-cv-200

v.                                    Honorable Hala Y. Jarbou

MELISSA VALIQUETTE et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss with prejudice Plaintiff's federal claims against Defendant Schroeder for failure to state a claim. The Court will dismiss without prejudice Plaintiff's state-law claims against Defendant Schroeder. In addition, the Court will dismiss with prejudice, for failure to state a claim, Plaintiff's Eighth Amendment and due process claims against Defendant Valiquette.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues LMF Correctional Officer Melissa Valiquette and Warden Sarah Schroeder.

Plaintiff alleges that, on the morning of May 21, 2020, Defendant Valiquette came to his cell door and stated, "I want to see that big d*ck I see printed in your shorts." (Compl., ECF No. 1, PageID.7.) Plaintiff informed Defendant Valiequette that he intended to file a Prison Rape Elimination Act (PREA) grievance, and he filed the grievance that same date. (*Id.*, PageID.7-8; *see also* Step-I grievance, ECF No. 1-1, PageID.14.) Later that same day, Defendant Valiquette wrote a Class-II misconduct ticket against Plaintiff for insolence, alleging that Plaintiff had made verbally harassing and degrading statements to her at 12:15 p.m. (Compl., ECF No. 1, PageID.8; Misconduct Report, ECF No. 1-2, PageID.15.) Plaintiff alleges that Defendant Valiquette issued the misconduct charge in retaliation for Plaintiff having filed his grievance.

On June 2, 2020, Lieutenant Kienitz (not a Defendant) found Plaintiff guilty on the misconduct charge and imposed sanctions of 20 days' loss of privileges. (Misconduct Hr'g Report, ECF No. 1-3, PageID.16.) Plaintiff appealed the misconduct determination. On appeal, although Deputy Warden Sprader (not a Defendant) found the staff member to be credible, he overturned the decision because the video surveillance system did not confirm that Defendant Valiquette was at Plaintiff's cell at the time reported. In the June 12, 2020, decision, Sprader instructed that all sanctions previously imposed on Plaintiff be removed. (Misconduct Appeal Report, ECF No. 1-4, PageID.17.)

On the date his misconduct conviction was overturned, June 12, 2020, Plaintiff filed another grievance against Defendant Valiquette, alleging that the misconduct charge was issued in retaliation for Plaintiff's first grievance. He alleges that the grievance placed Defendant Warden Schroeder on notice that she would have supervisory liability for Defendant Valiquette's actions.

On June 13, 2020, Plaintiff filed yet another grievance, alleging that unit staff were participating in retaliation by not restoring his two "incentive stages,"[1] which he had lost when Defendant Valiquette issued the misconduct charge. Plaintiff contends that Deputy Warden Sprader's finding that all associated sanctions should be removed required staff to restore his two incentive stages.

Plaintiff claims that Defendants, by their actions and inactions, violated his rights under the Eighth Amendment and retaliated against him for the exercise of his protected rights under the First Amendment. He also alleges that Defendants failed to comply with their own policies and deprived him of due process. Further, he alleges that Defendant Shroeder violated her duty to uphold and enforce the law, in violation of Mich. Comp. Laws § 752.11.

Plaintiff seeks declaratory and injunctive relief, including the discharge of Defendant Valiquette, together with compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

---

[1] Plaintiff presumably refers to the incentive stages of the Start Unit, a four-stage program designed as an alternative to administrative segregation, encouraging eligible prisoners to achieve progressive improvement and permit them to return to the general population. *See* MDOC Director's Office Memorandum (DOM) 2020-20 (eff. Jan. 1, 2020), available at https://www.michigan.gov/documents/corrections/DOM_2020-20_Start_Unit_Final_675313_7.pdf.

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.  Defendant Schroeder

Plaintiff alleges that Defendant Schroeder has supervisory liability for the actions taken by Defendant Valiquette. In addition, Plaintiff seeks relief under a Michigan criminal

4

provision, Mich. Comp. Laws § 752.11, which creates a misdemeanor for a public official's willful and knowing failure to uphold or enforce the law to the detriment of a person's legal rights.

To the extent that Plaintiff seeks to bring a § 1983 claim based on state criminal law, his claim fails. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendant Schroeder violated state law therefore fails to state a claim under § 1983.

To the extent that Plaintiff seeks to allege that Defendant Schroeder has supervisory liability under § 1983 for the actions of Defendant Valiquette, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

5

has failed to allege that Defendant Schroeder engaged in any active unconstitutional behavior. Accordingly, he fails to state a § 1983 claim against her.

Finally, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the Court dismisses all of Plaintiff's federal claims against Defendant Schroeder. Under the circumstances,[2] the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim against Defendant Schroeder will be dismissed without prejudice.

---

[2] The question whether Mich. Comp. Laws § 752.11 creates a private right of action is one of state law that weighs heavily against retaining supplemental jurisdiction under these circumstances. Criminal statutes generally do not provide a private right of action. *See People v. Herrick*, 550 N.W.2d 541, 544 (Mich. Ct. App. 1996); *see also Am. Postal Workers Union, AFL-CIO v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (noting that "the general rule is that a private right of action is not maintainable under a criminal statute"). Although Michigan courts have held that, in certain situations, a private remedy for damages may be inferred from a criminal statute, *see Lash v. City of Traverse City*, 735 N.W.2d 628, 636-37 (Mich. 2007) (citing *Gardner v. Wood*, 429 Mich. 290, 414 N.W.2d 706 (Mich. 1987)), "Plaintiff 'cites no case holding that a private right of action may be inferred from any of the criminal statutes on which [he] relies' . . . [and] offers no argument or analysis to support inferring a private right of action from any of those statutes.'" *Schultz v. City of Wyoming*, No. 1:15-cv-940, 2016 WL 7486275, at *6 (W.D. Mich. Dec. 30, 2016) (quoting *Ssayed v. Western Mich. Univ.*, No. 1:12-cv-797, 2013 WL 3277139, at *3 (W.D. Mich. June 27, 2013)). Nevertheless, under these circumstances, and where all federal claims against Defendant Schroeder have been dismissed, the equities weigh against the exercise of supplemental jurisdiction over the claim.

IV. **Defendant Valiquette**

Plaintiff alleges that Defendant Valiquette, by using sexually harassing language, violated his rights under the Eighth Amendment. Plaintiff also alleges that Defendant Valiquette issued a misconduct charge against him in retaliation for his threat to file a grievance. In addition, Plaintiff appears to allege that Defendant Valiquette violated prison policy and Plaintiff's due process rights by sexually harassing him and by not implementing Deputy Warden Sprader's direction that all sanctions against Plaintiff be lifted.

A. **Eighth Amendment**

Plaintiff alleges that Defendant Valiquette violated his rights under the Eighth Amendment by subjecting him to sexually harassing language.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and

7

psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). Nevertheless, courts routinely have held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Further, circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected

8

female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. Mar. 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim).

Indeed, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006). *Cf. Rafferty v. Trumbull Cnty.*, 915 F.3d 1087 (6th Cir. 2019) (prison officer's demand that female prisoner expose her breasts or masturbate in

9

officer's presence on six occasions is not "isolated, brief and not severe," and is sufficiently serious to state an Eighth Amendment claim that survives the defense of qualified immunity); *Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment).

In the instant case, Plaintiff alleges that Defendant Valiquette made a sexually degrading remark on a single occasion. While reprehensible, such conduct falls well short of stating an Eighth Amendment claim.

### B. Prison Policy & Due Process

Plaintiff contends that Defendant Valiquette violated prison policy in the use of sexually degrading language. He also alleges that Valiquette violated prison policy by not restoring Plaintiff to his higher incentive level in the Start Program once Plaintiff was found not guilty of the misconduct charge. The violations of policy, Plaintiff contends, deprived him of due process under the Fourteenth Amendment.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). As earlier discussed, § 1983 is addressed to remedying violations of federal law, not state law. *Lugar*, 457 U.S. at 924; *Laney*, 501 F.3d at 580-81.

Plaintiff's allegations also fail to state a procedural due process claim. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to suggest that his loss of two incentive levels in an alternative-to-segregation program amounts to an atypical and significant hardship. Indeed,

11

regardless of level in the program, participation in it permits prisoners to avoid placement in segregation. Plaintiff wholly fails to identify any conditions of confinement that could be atypical or significant. Consequently, he fails to state a due process claim.

### C. Retaliation

Plaintiff claims that Defendant Valiquette issued a false misconduct ticket against him in retaliation for Plaintiff's threat to file a grievance against Defendant Valiquette. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's allegations are sufficient to meet the first prong of the retaliation test. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Moreover, the filing of a misconduct charge against a prisoner is sufficient to amount to adverse action. The Sixth Circuit has held that even seven days' loss of privileges— which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben v. Thelen*, 887 F.3d 252, 266-67 (6th Cir. 2018) (quoting *Hill v. Lapin*,

630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")).  Sanctions for a finding of guilt on a Class-II misconduct charge include up to five days of toplock, 30 days of loss of privileges, 40 hours of extra duty, and restitution.  Plaintiff's allegations therefore satisfy the second prong of his retaliation claim.

In addition, the Court concludes that, given the immediate proximity of Plaintiff's threat to file a grievance to Defendant Valiquette's issuance of a misconduct charge, and in light of the other circumstances of the case, Plaintiff has alleged sufficient facts to support the motivation prong of the retaliation test.  *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'") (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  Plaintiff's retaliation claim against Defendant Valiquette therefore will remain in the case.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the federal claims against Defendant Schroeder will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss without prejudice Plaintiff's state-law claims against Defendant Schroeder. The Court will also dismiss, for failure to state a claim, the Eighth Amendment and due process claims against Defendant Valiquette. Plaintiff's First Amendment retaliation claim against Defendants Valiquette remains in the case.

An order consistent with this opinion will be entered.

Dated: November 18, 2020         /s/ Hala Y. Jarbou
                                 Hala Y. Jarbou
                                 United States District Judge